**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Carmino Giannone and Giannone Services, Inc. | : | Civil Action No. 13-5137 |
| | : | |
| v. | : | **Jury Trial Demanded** |
| Clyde Neihart d/b/a Stealth Recovery/Right Turn | : | |
| Transportation and Jeffrey McGee, individually and in | : | |
| his official capacity as Detective for the Plymouth | : | |
| Township Police Department and Joseph Lawrence, | : | |
| individually and in his official capacity as Chief of the | : | |
| Plymouth Township Police Department and Plymouth | : | |
| Township d/b/a Plymouth Township Police Department and | : | |
| Montgomery County d/b/a Plymouth Township Police | : | |
| Department and Joseph Venezia, Inc. d/b/a J.V.I. Towing | : | |
| and Recovery, and Roger Cackovic d/b/a RJ Cackovic, Inc. | : | |
| & d/b/a RJ Cackovic Auto Sales, Service & Rental and | : | |
| John Does 1-10 | : | |
| | : | |

**ORDER**

AND NOW, this            day of                    , 2013, upon consideration of the

Plymouth Township Defendants' Motion to Dismiss, and any Response thereto,  it is hereby

**ORDERED** and **DECREED** that all claims against Defendants, Plymouth Township, Detective

Jeffrey McGee and Chief Joseph Lawrence, are **DISMISSED WITH PREJUDICE**.

_____

U.S.D.C., J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Carmino Giannone and Giannone Services, Inc.   : Civil Action No. 13-5137
            :
      v.         : **Jury Trial Demanded**
Clyde Neihart d/b/a Stealth Recovery/Right Turn   :
Transportation and Jeffrey McGee, individually and in   :
his official capacity as Detective for the Plymouth   :
Township Police Department and Joseph Lawrence,   :
individually and in his official capacity as Chief of the   :
Plymouth Township Police Department and Plymouth   :
Township d/b/a Plymouth Township Police Department and :
Montgomery County d/b/a Plymouth Township Police   :
Department and Joseph Venezia, Inc. d/b/a J.V.I. Towing   :
and Recovery, and Roger Cackovic d/b/a RJ Cackovic, Inc. :
& d/b/a RJ Cackovic Auto Sales, Service & Rental and   :
John Does 1-10          :
            :

### PLYMOUTH TOWNSHIP DEFENDANTS' MOTION TO DISMISS
### PLAINTIFFS' COMPLAINT PURSUANT TO FED.R.CIV.P. 12 (b)(6)

   Defendants, Plymouth Township, Detective Jeffrey McGee and Chief Joseph Lawrence,

by and through their undersigned counsel, Marshall Dennehey Warner Coleman & Goggin and

Christopher Boyle, Esquire, file this Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and

aver:

   1.   Plaintiffs instituted this action by filing a Complaint in the U.S. District Court for

the Eastern District of Pennsylvania on September 3, 2016, serving moving defendants on

September 16, 2013.  (A copy of Plaintiffs' Complaint is attached hereto as Exhibit "A").

   2.   Plaintiffs' Complaint alleges violation of civil rights pursuant to 42 U.S.C. §1983

under the Fourth and Fourteenth Amendments, pendent state tort claims, a conspiracy claim, and

a Monell claim.

3.      For the reasons more fully set forth in the Memorandum of Law, which is attached hereto and incorporated herein by reference, Plaintiffs' Complaint, as to the Plymouth Township Defendants, should be dismissed, with prejudice.

WHEREFORE, Defendants, Plymouth Township, Detective Jeffrey McGee and Chief Joseph Lawrence, respectfully request this Honorable Court dismiss Plaintiffs' Complaint, with prejudice, and enter the Order attached hereto.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN


BY:    s/Christopher Boyle
       CHRISTOPHER BOYLE, ESQUIRE
       ID#  PA93002
       620 Freedom Business Center, Suite 300
       King of Prussia, PA 19406
       (610) 354-8476 Fax (610) 354-8299
       Email:  cpboyle@mdwcg.com
       Attorney for Plymouth Township Defendants


DATE:  9/30/13
26/2371354.v1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Carmino Giannone and Giannone Services, Inc. | : | Civil Action No. 13-5137 |
| | : | |
| v. | : | **Jury Trial Demanded** |
| Clyde Neihart d/b/a Stealth Recovery/Right Turn | : | |
| Transportation and Jeffrey McGee, individually and in | : | |
| his official capacity as Detective for the Plymouth | : | |
| Township Police Department and Joseph Lawrence, | : | |
| individually and in his official capacity as Chief of the | : | |
| Plymouth Township Police Department and Plymouth | : | |
| Township d/b/a Plymouth Township Police Department and: | |
| Montgomery County d/b/a Plymouth Township Police | : | |
| Department and Joseph Venezia, Inc. d/b/a J.V.I. Towing | : | |
| and Recovery, and Roger Cackovic d/b/a RJ Cackovic, Inc. : | |
| & d/b/a RJ Cackovic Auto Sales, Service & Rental and | : | |
| John Does 1-10 | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLYMOUTH TOWNSHIP DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED.R.CIV.P. 12 (b)(6)

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs instituted this action by filing a Complaint in the Eastern District of Pennsylvania on September 3, 2013.  (A copy of Plaintiffs' Complaint is attached as Exhibit "A", hereafter "Complaint").  Defendants were served with the Complaint on September 16, 2013, and file this timely Motion to Dismiss.

Plaintiff named Detective Jeffrey McGee of the Plymouth Township Police Department, along with the Department itself and Chief Joseph as defendants in this matter.   Plaintiff has also named Montgomery County as a defendant, apparently because the Township is located within the geographical boundaries of the County.  (Id., generally).  In addition, Plaintiff has named Joseph Venezia, Inc., Roger Cackovic (RJ Cackovic Auto Sales) and Clyde Neihart, business entities with whom Plaintiff has dealt, as Defendants.  (Id.).

On October 4, 2012, Plaintiff Carmino Giannone executed a Lease Agreement with Defendant Clyde Neihart.  (Id. at ¶¶ 12-13).  Plaintiff claims that later the same day parties altered their deal to an outright sale.  (Id. at ¶¶ 14-15).  In January of 2013, Plaintiff stopped working for Neihart, and Neihart demanded that Plaintiff return the truck.  (Id. at ¶¶ 17-18).  Neihart gave Defendant Venezia a repossession order and directed Venezia to give it to the Plymouth Township Police Department.  (Exhibit "A" at ¶ 21 and Plaintiffs' Exhibit "B").  It is Plaintiff's contention that Venezia contacted the Plymouth Township Police Department and "incorrectly informed them that Plaintiff had for fraudulently obtained the truck."  (Exhibit "A" at ¶ 24).

Plaintiff contends that "soon after, Plaintiff was pulled over by Defendant, Plymouth Township Police Detective Jeffrey McGee."  (Id. at ¶ 25).  Plaintiff claims that the truck was then repossessed.  (Id. at ¶ 27).[1]  Plaintiff accuses the Defendants of acting "with a common purpose to repossess Plaintiff's truck…with the guise of a fraudulent repossession order."  (Id. at ¶ 38).  Be that as it may, Plaintiff does not contend that he has exercised any of the rights available to him as a matter of state law to obtain the truck back from Neihart, Venezia or Cackovic, and does not allege, as indeed he cannot, that the Plymouth Township Defendants are in possession of the vehicle.

II.     **ALLEGATIONS OF PLAINTIFFS' COMPLAINT**

Plaintiffs bring the following claims against the Defendants:

Count I – Procedural due process claim against "Defendants" pursuant to 42 U.S.C. § 1983, under the 4th and 14th Amendments;

Count II – "Fraud" against "Defendants";

---

[1] While Plaintiff attributes  the repossession itself to Detective McGee, several paragraph later he points out that "Venezia towed away the truck…"  (Exhibit "A" at ¶ 33).  Plaintiff's Exhibit "B", makes it clear that it was not in fact the police department that repossessed the truck, something it would not have the power to do in any event.

Count III – "Conspiracy – Aiding and Abetting" against "Defendants";

Count IV – "Monell" against "Defendants";

Count V – "Abuse of process" against "Defendants";

## III.      STANDARD OF REVIEW

When considering a Motion to Dismiss under the Federal Rules, the Court must accept as true, well pled allegations in plaintiff's Complaint, and construe them in a light most favorable to the plaintiff.  The court may dismiss the claim if it appears beyond a reasonable doubt, that plaintiff cannot prove those set of facts in support of a claim which would entitle him to relief.  Labove v. Lalley, 809 F.2d. 220 (3d Cir. 1987).  The court may consider Exhibits attached to the Complaint, and matters of public record.  Benefit Guarantee Corp. v. White Consol Industries, 998 F. 2d. 1192, 1196 (3d. Cir. 1993).

The Supreme Court has clarified its position on the standard under a Motion to Dismiss, in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  The "no set of facts standard" found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), has been abrogated in favor of requiring a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. 1974.  As a result of the Twombly holding, plaintiffs must have "nudged [their] claim across the line from conceivable to plausible, or the complaint must be dismissed."  (Id.).

> While a complaint attacked by a Rule 12(b)(6) Motion to Dismiss does not need detailed factual allegations, plaintiff's obligation [under Rule 8(a)(2)] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and the formulated recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

(Id. at 1964-65) (citations omitted).

The Supreme Court has cautioned against bare bones pleading, in <u>Ashcroft v. Iqbal</u>, 2009

U.S. LEXIS 3472 (2009), where the Court held:

> As the Court held in <u>Twombly</u>, 550 U.S. 544, the pleading
> standard Rule 8 announces does not require "detailed factual
> allegations," but it demands more than an unadorned, Defendant-
> unlawfully-harmed-me accusation. <u>Id</u>. at 555…A pleading that
> offers "labels and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not due." 550 U.S. at 555. Nor
> does a complaint suffice if it tenders "naked assertions" devoid of
> "further factual enhancement." <u>Id</u>. at 557.

<u>Ashcroft</u>, 2009 U.S. LEXIS 3472 at *28.

As the Court went on to hold, plaintiffs need not prove their case at the complaint stage,

utilizing a probability requirement, but rather, must meet a plausibility standard that asks for

more than "a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.

The court does not have to accept every allegation of Plaintiff's Complaint as true. The

court need not credit "bold assertions" or "legal conclusions" in a Complaint, when deciding a

Motion to Dismiss. <u>Burlington Coat Factory SEC Litigation</u>, 114 F. 3d. 1410, 1429-30 (3d. Cir.

1997). Further, unsupported conclusions and unwarranted inferences need not be accepted as

true. <u>Flannigan v. Shively</u>, 783 F. Supp. 926, 927 (M. D. Pa. 1992).

## IV.     LEGAL ARGUMENT

### A.     Plaintiffs Cannot Support Due Process Claim

At Count I of the Complaint, Plaintiffs allege a procedural due process violation against

all Defendants. These claims should be dismissed as a matter of law. Where a Plaintiff has failed

to avail themselves of process that is available, they cannot bring a Fourteenth Amendment claim

against Defendants. Defendants rely on the well reasoned Memorandum and Order of Judge

Dalzell of the Eastern District:

> When a Plaintiff "seek[s] return of property lawfully seized but no
> longer needed for police investigation or criminal prosecution"
> from a state or local entity, his claim is properly advanced under
> the due process clause of the Fourteenth Amendment.  See, City of
> West Covina v. Perkins, 525 U.S. 234, 236 (1999).  We will
> therefore treat [Plaintiff's] assertions regarding Defendants' failure
> to return [her] property as a Fourteenth Amendment claim.  "In
> order to state a claim for failure to provide due process, Plaintiff
> must have taken advantage of the processes that are available to
> him or her, unless those processes are unavailable or patently
> inadequate."  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).
> Under Pa.R.Crim.P. 588 (A), "[a] person aggrieved by a search and
> seizure, whether or not executed pursuant to a warrant, may move
> for the return of the property on the ground that he or she is
> entitled to lawful possession thereof.  Such a motion shall be filed
> in the Court of Common Pleas for the judicial district in which the
> property was seized."
>
> [Plaintiff] has not alleged that [she] has availed [herself] of Rule
> 588, much less that the procedure the rule establishes is
> "unavailable or patently inadequate."  [Her] Fourteenth
> Amendment claim therefore appears defective.

Kauffman v. Pennsylvania Society for the Prevention of Cruelty to Animals, et al., 2011

U.S. Dist. LEXIS 15383 at * 41-42 (E.D. Pa. Feb. 16, 2011).  In a footnote, the Court observes

that "several courts have already determined that Pennsylvania has put into place adequate post

deprivation remedies."  (Id. citing Barber v. Pennsylvania Dep't of Agric., 2010 U.S. Dist.

LEXIS 42968 (W.D. Pa. 2010) (Summarizing district court jurisprudence respecting

Pa.R.Crim.P. 588).  While these cases occur in the context of criminal proceedings, Plaintiff

advances no factual basis for a due process claim against these Defendants where sufficient, and

significant, post-deprivation remedies were, and remain, available to him.

        Further, while Plaintiff at one point alleges that Detective McGee repossessed his vehicle

(Exhibit "A" at ¶ 27), several paragraphs later he admits that it was in fact Venezia who towed

away the truck.  (Id. at ¶ 33).  As the Third Circuit has held, "[t]he mere presence of police at the

scene of a private repossession does not, alone, constitute state action causing a deprivation of a

protected property interest." Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998).  Plaintiff himself pleads that the Detective McGee pulled over Plaintiff because of an allegation of a broken taillight.  (Id. at ¶ 26).  Like the officer in Abbott, it is apparent even in the face of Plaintiff's pleading that Detective McGee was present to maintain the peace, not to take sides or assist the private repossessor.  (Abbott, 164 F.3d at 147).

Plaintiff contends that "Neihart is now in possession of the truck and refuses to return the Plaintiff's belongings inside the truck, worth about $20,000."  (Exhibit "A" at ¶ 36).  He does not contend, as indeed he cannot, that the police department or its employees are, or were, in possession of the vehicle beyond the time required for Detective McGee's traffic stop.  Plaintiff also does not contend, as indeed he cannot, that he was ever issued a traffic citation for the broken taillight.  In short, had Plaintiff been criminally charged in some way, and his vehicle seized as a result, he would have the protections of Pennsylvania state law, specifically Pennsylvania Rule of Criminal Procedure 588, to obtain the vehicle back from the police department.  Similarly, he may avail himself of the courts of common pleas, specifically Montgomery County, in order to obtain return of his truck.  There are adequate post deprivation remedies available to the Plaintiff, and no indication on the face of the Complaint that the police were acting on anything besides what they believed was a valid repossession order.

As Plaintiffs have not alleged, and cannot allege, that they have availed themselves of the remedies available pursuant to state, criminal or civil law, their procedural due process claims should be dismissed.  Plaintiffs cannot sleep on their  rights in state court and then pursue a due process claim in federal court.  Plaintiffs were aware, or should have been aware, that there were adequate  post-deprivation protection available in the civil courts of Montgomery County to protect them.  Plaintiffs' due process claims should be dismissed.

**B.**     <u>**Fraud**</u>

Count II attempts to state a claim for fraud against all defendants.  Federal Rule of Civil Procedure 9 (b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  The rule "requires Plaintiffs to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the preciseness conduct with which they are charged, and to safeguard defendants against spurious charges of fraud."  <u>Craftmatic Sec. Litg. v. Kraftsow,</u> 890 F. 2d 628, 645 (3d Cir. 1989).  The particularity requirement of Rule 9 (b) has three purposes:

(1) to place the defendants on notice and enable them to prepare meaningful responses;

(2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a strike suit; and

(3) to safeguard defendants from frivolous charges which might damage their reputation.

<u>New England Data Serv., Inc. v. Becher</u>, 829 F. 2d 286, 289(1st Cir. 1987).  Because Plaintiff's fraud claim contains nothing more than bare, conclusory allegations, it must be dismissed.

The same result holds under state law: "Averments of fraud shall be averred with particularity."  <u>Pa.R.C.P. 1019(b)</u>.  In satisfaction of the particularity requirement for pleading fraud, Pennsylvania Courts have required that two conditions must always be met:  the pleadings must adequately explain the nature of the claim to the opposing party, so as to permit him/her to prepare a defense, and they must be sufficient to convince the Court that the averments are not merely subterfuge.  <u>In re: Estate of Schofield</u>, 477 A.2d 473, 477 (Pa. 1984); <u>*see also*</u>, <u>Bata v. Central-Penn National Bank of Phila.</u>, 224 A.2d 174, 179 (Pa. 1966).

Scienter, the intent to engage in wrongful conduct, is a requisite element of a cause of action in fraud.  <u>Mele Construction Co., Inc. v. Crown American Corp.</u>, 618 A.2d 956 (Pa. Super. 1992).  Moreover, while malice, intent, knowledge and other conditions of mind may be

averred generally, a Plaintiffs pleading fraud must do more than simply assert baldly that the defendant acted with scienter.  Instead, Plaintiffs must set forth basic facts supporting the allegation.  See, e.g., In re: Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1418 (3rd Cir. 1996)("While state of mind may be averred generally, Plaintiffs must still allege facts that show the Court their basis for inferring that the defendants acted with 'scienter.'")

Moreover, the elements for a cause of action for fraud are:

(1)     a material misrepresentation;

(2)     a fraudulent utterance thereof;

(3)     an intention by the maker that the recipient would thereby
        be induced to act;

(4)     justifiable reliance by the recipient upon the
        misrepresentation; and

(5)     damages to the recipient as the proximate result.

Mele Constr. Co., 618 A.2d at 961; see also, 25 P.L.E. Fraud Legal §2.

For a statement to constitute fraud, it must be made with the knowledge of its falsity or with reckless disregard for whether or not it is true.  B.O. v. C.O., 509 A.2d 313, 315-316 (Pa. Super. 1991)(quoting Warren Balderston Co. v. Integrity Trust Co., 170 A.2d 282 (Pa. 1934); see also, Lind v. Jones, 135 F.Supp.2d 616, 620 (E.D. Pa. 2001).  The Pennsylvania Rules require fraud to be alleged with particularity.  Therefore, a Complaint must state and show the statements, acts or conduct constituting fraud, scienter or facts from which the equivalent of a scienter may be legitimately applied, that the representations were made with intent to deceive, or the facts from which such intent may be inferred, and that the pleader believed the representations to be true and acted in reliance on them.  See Long v. McAllister, 118 A. 506 (Pa. 1922); Resolution Trust Corp. v. Farmer, 836 F.Supp. 1123 (E.D. Pa. 1993).

Nowhere in the Complaint have Plaintiffs alleged sufficient facts to aver fraud with sufficient particularity in violation of Pennsylvania Rule of Civil Procedure 1019(b) and the case law interpreting that rule.  As such, their claims of fraud cannot stand, as a matter of state or federal law.

**C.**   **Plaintiffs' Conspiracy Claims – Federal Law claim**

To state a claim under §1985(3), a plaintiff must plead and ultimately prove:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law, and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  United Brotherhood of Carpenters v. Scott, 463 U.S. 825, 829, 103 S. Ct. 3252 (1983).  A claim under §1985(3) requires "some racial, or perhaps otherwise class based invidiously discriminatory animus behind the conspirator's actions."  Bray v. Alexandria Williams Health Clinic, 506 U.S. 263 (1993).  Plaintiffs have failed to plead a class based or racial basis, or even to indicate the race of the Defendants against whom they have brought suit.

Plaintiff's claim of a conspiracy pursuant to U.S.C. §1985 fails for a lack of specificity, required under the Third Circuit jurisprudence.  The mere incantation of the word "conspiracy" without the specifics, is insufficient to meet plaintiff's rudimentary burden:

> Only allegations of conspiracy which are particularized, such as those addressing: (1) the period of the conspiracy; (2) the object of the conspiracy; and (3) certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.  The allegations of conspiracy are deficient.  [The Complaint] speaks only conclusionary of a conspiracy among the individual defendants.  Nowhere are the facts set forth which the plaintiff believes support the charge of conspiracy.  Such facts could include, for example, the times and places conspiratorial meetings took place.

<u>Goodwin v. Moyer</u>, 2006 U.S. Dist. LEXIS 18492 at *4 (M.D. Pa. March 2, 2006).

Plaintiffs' bold assertions, without particularized allegations, will not suffice.  As the Eastern District Court held in <u>Panayotides v. Rabenold</u>, 35 F. Supp. 2d. 411, E. Dist. Pa. 1999:

> In order to sufficiently allege conspiracy, plaintiff must show ' a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means, for an unlawful purpose.' <u>Hammond v. Creative Financial Planning</u>, 800 F. Supp. 1244, 1248 (E. D. Pa. 1992).  The plaintiff must make 'specific allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.' Id.  'Only allegations of conspiracy which are particularized, such as those addressing the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirator has taken to achieve the purpose will be deemed sufficient.' <u>Dutton</u>, 1997 W.L. 732856 at *2 (quoting <u>Rose v. Bartle</u>, 871 F. 2d. 331, 366 (3d. Cir. 1989)) (internal citations omitted).  Further, "agreement is the sine qua non of a conspiracy." <u>Spencer v. Steinman</u>, 968 F. Supp. 1011, 1020 (E. Dist. Pa. 1997).

<u>Id</u>.

Plaintiffs have failed to plead a claim for a violation of 42 U.S.C. §1985 and 42 U.S.C. §1986 as they did not aver, and no evidence exists to suggest, that the purported conspiracy was motivated by some racial or otherwise class based, invidious discriminatory animus, which is required in order to state a prima facie case.  See <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).  Therefore, any federal conspiracy claim against the Defendants should be dismissed with prejudice.

### D. <u>Plaintiffs' Conspiracy Claims – State Law</u>

As it is not clear from Plaintiffs' Complaint whether they pursue conspiracy claims as a matter of federal or state law, Defendants address a state law claim in an abundance of caution. In order to pursue a claim for conspiracy under state law, the Plaintiffs must "allege the existence of all elements necessary to such a cause of action." <u>Rutherford v. Presbyterian University Hospital</u>, 417 Pa. Super. 316 (1992):

10

> The Pennsylvania Supreme Court set forth the elements of civil conspiracy in Thompson Coal Company v. Pike Coal Company, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979): 'it must be shown that two or more persons combined or agreed with an intent to do an unlawful act or to do an otherwise lawful act by unlawful means.' Proof of malice, i.e. an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification.  Furthermore, conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results.' Lackner v. Glosser, 2006 Pa. Super. 14 (May 25, 2005) citing:   Grose v. Proctor & Gamble Paper Products, 2005 Pa. Super 8 (2005).

Id.

Plaintiff has failed to meet his pleading burden under state law.  Plaintiff attempts through artful pleading to assert that all Defendants have conspired together to deprive him of his rights.  Be that as it may, Plaintiff has asserted that the police Defendants relied upon a repossession order that Co-Defendants formulated, not one that the police had any part in.  He alleges no business relationship between police and Co-Defendant, nor any date, time or specific act of a conspiratorial nature that would support his claim.  Therefore, any conspiracy claim against the Defendants should be dismissed with prejudice.

**E.**   **Abuse of Process**

Plaintiffs claim that the actions of Defendants amount to an abuse of process.  As the Pennsylvania Superior Court has pointed out:

> To establish a claim for abuse of process, it must be shown that the Defendant (1) used illegal process against the Plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the Plaintiff.  Abuse of process is, in essence, the use of legal process as a tactical weapon to coerce the desired result that is not the legitimate object of the process.  Thus, the gravamen of this tort is the perversion of legal process to benefit someone in achieving a purpose which is not an authorized goal for the procedure in question.

Harris v. Brill, 2004 Pa. Super. 25 (2004); see also Rosen v. American Bank of Rolla, 426 Pa. Super. 376 (1993); Werner v. Plate-Ziberk, 2002 Pa. Super. 42 (2002); McGee v. Feege, 517 Pa. 247, 259 (1987).

Plaintiff has not pled facts sufficient to support a claim of an abuse of process in this matter.  It is Plaintiff's contention that the police were presented with a fraudulent repossession order, and that they stopped Plaintiff's vehicle for a motor vehicle code violation.  It is not alleged that it was the police who repossessed Plaintiff's vehicle, but rather, Co-Defendant Venezia.  As the police did not use illegal process against the Plaintiff for a purpose for which it was not designed, his abuse of process claim should be dismissed.

**F.**      **Intentional Tort Claims**

Obviously, an intentional tort claim cannot stand against Detective McGee or Chief Lawrence in their official capacities, nor against the Township.  Latkis v. York, 258 F.Supp. 2d 401, 405 (E.D. Pa. 2003) (citing 42 Pa. C.S. § 8541-8542); Bornstad v. Honey Brook Township, 2004 U.S. Dist. LEXIS 9690 (E.D. Pa. May 26, 2004).  Zernhelt v. Lehigh County Office of Children and Youth Services, 659 A.2d 89, 90 (Pa.Cmwlth. 1995).  In addition, a local agency cannot be liable for intentional tortious acts of its employees.  Dean v. Commonwealth of Pennsylvania Department of Transportation, et al., 561 Pa. 503, 751 A.2d 1130 and Pahle v. Colebrookvale Township, et al., 221 F.Supp 2d 361 (E.D.Pa. 2002).

Furthermore, the Pennsylvania Political Subdivision Tort Claims Act grants local agencies and its employees absolute immunity subject to the exceptions set forth in the Act.  42 Pa. C.S.A. §8541 provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any acts of a local agency or an employee thereof or any other person.

Id.

As a local agency, and employees of a local agency, moving defendants are immune from liability unless Plaintiffs plead a cause of action satisfying the requirements of §8542.  Under §8542, liability may be imposed only, "if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b)."  The claims alleged must first be cognizable under "common law or statute creating a cause of action if the injury were caused by a person not having an available defense of immunity and, in addition, the injury must be "caused by the negligent acts of a local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b)."

Plaintiffs must plead that the cause of action fits within one of §8542(b)'s exceptions to immunity.  The eight exceptions to immunity are narrowly construed because of the legislature's clear intent to prefer immunity for local agency parties, such as  Objecting Defendants.  Mascaro v. Youth Studies Center, 523 A.2d 1118 (Pa. 1987).  As Plaintiffs' intentional tort claims cannot stand against Plymouth Township, or the moving defendants in their official capacities, those claims should be dismissed.

### G.    Personal Involvement

Claims of constitutional violations cannot be based on respondeat superior, and require some level of personal involvement by an alleged offender.  To establish personal liability in a § 1983 action, Plaintiffs must demonstrate that a government official, acting under color of state law, caused the deprivation of a federally protected right.  Hafer v. Melo, 502, US 21, 25 (1991).  In the matter at bar, Plaintiffs have made legal conclusions, and couched them as facts, exactly the harm that the Supreme Court has sought to cure with Iqbal and Twombly rulings.  Plaintiffs state, in conclusory fashion, that the Township and Chief, through their police officers violated

plaintiff's federal, constitutional rights.  In effect, Plaintiffs assert that liability attaches, under a

vicarious liability theory, that has been firmly rejected in the circuit:

> Where, as here, an operation results in the use of allegedly
> excessive force against only one of several people, that use of force
> does not, by itself, give rise to a plausible claim for supervisory
> liability against those who plan the operation.  To hold otherwise
> would allow a plaintiff to pursue a supervisory liability claim
> anything a planned operation resulted in excessive force, merely by
> describing the force used and appending the phrase "and the chief
> told them to do it."  Iqbal require more.

Santiago v. Warminster, 2010 U.S. App. LEXIS 25414 at * 27 (3d Cir. December 14,

2010).  The Court left for another day, the question as to whether there exist any plausible

supervisory liability claim in light of Iqbal.  Id. at * 19.

While Plaintiffs have named officers and officials of the Plymouth Township Police

Department in the Complaint, Defendants submit that there is no evidence to support a claim of

personal involvement in a constitutional violation by Chief Lawrence, who appears to have been

named in the Complaint by virtue of his title, rather than by virtue of any action he took.  All

claims against him should be dismissed.

### H.     Plaintiffs' Monell Claim Should be Dismissed with Prejudice[2]

A municipality can be held liable under §1983 only if plaintiff shows that the actions that

were violative of his Civil Rights, implemented a policy, ordinance or custom of the local

government or were committed by an  official high enough in government so that the actions can

fairly be said to represent a government decision.  Monell v. Department of Social Services, 436

U.S. 658, 694 (1978).

---

[2] §1983 does not permit the imposition of liability upon a supervisory official for the conduct of a subordinate based solely on respondeat superior Monell v. The Department of Social Services, 436 U.S. 658, 691 (1978)  Further, if there is no constitutional violation in the first place, there can be no claim of supervisory liability, Los Angeles v. Heller, 475, U.S. 796, 799 (1986).

Plaintiffs must provide evidence that the government unit itself supported a violation of Plaintiffs' constitutional rights.  Bielevich v. Dubinon, 915 F.2d 845, 850 (3rd Cir. 1990);  Monell 436 U.S. at 695.  The United States Supreme Court in Monell held that a Civil Rights Complaint against a  municipality or its agency must allege:

1. The existence of a custom or a policy of the municipality, which is of such long standing to have the force of law; and

2. That one of the municipality's employees violated the plaintiff's Civil Rights while acting pursuant to this custom or policy.

Id.

Municipalities do not cause constitutional deprivations merely by hiring alleged tortfeasors.  Rather, the complained of injury must be causally linked to a custom or policy of a municipality pursuant to which an employee was acting.  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996).

The municipality or its agency may be held liable for acts that it has ordered.  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  It also may be liable by virtue of action taken by its own officials when those officials have "the final authority to establish municipal authority with respect to the action ordered."  City of St. Louis v. Paprotnik, 45 U.S. 112 (1988).

Plaintiffs must also show a causal link between the alleged custom or policy and the alleged §1983 violation and concomitant harm.  In short, "a municipality can be liable under §1983 only where its policies are the 'moving force behind the violation.'"  City of Canton v. Harris, 489 U.S. 379, 386 (1989) (quoting Monell, 436 U.S. at 694).

Plaintiffs have identified no such custom, practice or policy.  To the extent Plaintiffs allege that the actions of the municipal defendants amount to Monell liability pursuant to a

theory of "vicarious liability," this is precisely the theory against which the Supreme Court has consistently warned:

> We have consistently refused to hold municipalities liable under a theory of respondent superior. See <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 818, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985) (plurality opinion); id., at 828 (opinion of Brennan, J.); <u>Pembaur</u>, 475 U.S. at 478-479; <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 122, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988) (plurality opinion); id., at 137 (opinion of Brennan, J.); <u>Canton v. Harris</u>, 489 U.S. 378, 392, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).

<u>Bd. of the County Comm's v. Brown</u>, 520 U.S. 397  (1997).

Claims of constitutional violations cannot be based on respondent superior, and require some level of personal involvement by an alleged offender.  To establish personal liability in a §1983 action, Plaintiffs must demonstrate that a government official, acting under color of state law, caused the deprivation of a federally protected right.  <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).

There is, of course, a distinction between §1983 claims brought against a public official in his or her personal capacity, as opposed to official capacity.  As explained by the United States Supreme Court, "official capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).

A state actor can be held liable under §1983, only if  the Plaintiff shows that the actions that were violative of his or her civil rights, implemented a policy, ordinance or custom of the state actor, or were committed by an official high enough, so that the actions can fairly be said to represent a government decision.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978).

To the extent Plaintiffs' claim allege failure to train, discipline and supervise, they fail, as well.

The Court of Appeals for the Third Circuit has long held that "a failure to train, discipline or control can only form the basis for §1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident, or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir., 1998); Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir., 1997); Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir., 1988). More specifically, a plaintiff "must show that a 'reasonable municipal policymaker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question.'" Cacciatore v. City of Philadelphia, 2005 U.S. Dist. Lexis 19064, *1, *6 (E.D. Pa., Sept. 1, 2005) (quoting, Garcia v. County of Bucks, 155 F. Supp. 2nd 259, 268 (E.D. Pa., 2001)); Strauss v. Walsh, 2002 U.S. Dist. Lexis 24717, *1, *10 (E.D. Pa. Dec. 18, 2002); Altieri v. Pennsylvania State Police, 2000 U.S. Dist. Lexis 5041, *1, *39-40 (E.D. Pa., April 20, 2000).

Further, in Pennsylvania, Officer Training is governed by state law.  All persons employed as Police Officers in the Commonwealth must be certified by MPOETC.  See, 53 Pa. C.S. §2161 et seq., see also, Colbert v. Angstad, 169 F. Supp. 2d 352, 358 Note 9 (E.D. Pa., 2001).  As a requirement for continued certification, all police officers must receive both basic training (i.e., Act 120 Training) and annual training (i.e., Act 180 Training).  Id.

Numerous Courts have held that where a state imposes training standards, evidence showing adherence to those standards bars any finding that the police department was deliberately indifferent to the need for additional training.  See, Tapia v. City of Greenwood, 965 F.2d 336, 339 (7th Cir., 1992); Ross v. Town of Austin, 2002 W.L. 31160139, at *9 (S.D. IN,

Sept. 23, 2002); <u>Johnson v. City of Milwaukee</u>, 41 F. Supp. 2d 917, 931 (E.D. WIS, Feb. 25,

1999); <u>Williams v. Musser</u>, 1997 Westlaw 403509, at *10 (N.D. IL, July 16, 1997).

  For example, in <u>Carswell,</u> the Third Circuit found that the plaintiff failed to establish

deliberate indifference or causation where the Police Chief "testified that Officers attend annual

in-service courses, where they study, among other subjects, relevant Court Opinions" and he

"updated the [Police Manual]… and directed his officers to become familiar with the updated

Policy Manual, which covered the 'Continuum of Force.'"  The Court explained that "[t]his

evidence did not establish a lack of training on the use of deadly force that amounted to a

deliberate indifference, nor does it demonstrate a pattern of underlying constitutional violations

that should have alerted [the municipality] to an inadequate training program." <u>Id</u>. at 245.  Thus,

the Third Circuit held that the plaintiff failed to "meet the high burden of proving deliberate

indifference." <u>Id</u>.  Likewise, in <u>Tapia</u>, Police Officers conducted a warrantless search of the

plaintiff's home.  Following the search, the plaintiff commenced an action against the police

department, alleging that it failed to train its officers with regard to such searches.  At the end of

Trial, the jury returned a verdict against the defendant.  On Appeal, the police department argued

that the evidence was insufficient to establish the City had a constitutionally deficient program of

training its officers, because the training complied with the minimum standards under state law.

The Seventh Circuit agreed, explaining as follows:

> In Indiana, police officer training is governed by state law.  Ms.
> Tapia offered no evidence to indicate that the city failed to adhere
> to the minimum standards for training police officers under Indiana
> law…From this evidence, we cannot say that "the need for
> enhanced training [was] so obvious and the inadequacy of
> training [was] so likely to result in the violation of constitutional
> rights, that the jury could reasonably attribute to the policymakers,
> a deliberate indifference to those training needs."

<u>Id</u>.  (Citation omitted).

In the matter at bar, to the extent Plaintiff has alleged that the municipal defendants engaged in a failure to train, discipline or supervise, without identifying the area where the municipality is deficient, or a direct act that should amount to liability for failure to discipline or train, his claim fails.  Plaintiff has alleged no custom, practice or policy sufficient to support Monell liability, as a matter of law.

## I.      The Individual Defendants Are Entitled to Qualified Immunity

Detective Jeffrey McGee and Chief Joseph Lawrence are entitled to qualified immunity. Should it be determined that the investigation of the Plaintiff  is somehow defective, the individual defendants are, nonetheless, entitled to qualified immunity.

The United States Supreme Court has held that qualified immunity serves to "insulate government officials from liability for assumable damages when the discretionary conduct of that official did not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The standard for applying qualified immunity is an objective one.  The Supreme Court has instructed that the inquiry must focus on the "objective reasonableness of an official's conduct as measured by reference to clearly established law."  (Id.).

The Court further explained, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say official action is protected by qualified immunity unless the very action in question has been declared unlawful, but it is to say that the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635 (1982).

Qualified immunity is an immunity from suit, and not a mere defense to liability.  As a general rule, the issue of whether an official is entitled to qualified immunity should be

determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation.  Mitchell v. Forsythe, 472 U.S. 511 (1985).

In Hunter v. Bryant, 112 S. Ct. 534 (1991), the Supreme Court recognized that "the qualified immunity standard gives ample room for mistakes of judgment in protecting all but the plainly incompetent or those who knowingly violate the law.  This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued."  Id. at 137. The question of whether an official is entitled to qualified immunity is not limited solely to determining whether the official violated clearly established law.  The United States Supreme Court has repeatedly instructed that an official can be entitled to qualified immunity if that official violated clearly established law, but the violation was "objectively reasonable" based upon the information in his possession at the time of the conduct of which plaintiff complained.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court explained why a court must conduct an additional level of analysis in determining whether an officer is entitled to qualified immunity:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, [] will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts, but have a mistaken understanding as to whether a particular [action] is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the qualified immunity defense.

Saucier, 533 U.S. at 205.  If an officer did violate a clearly established right, the court must determine whether the officer "made a reasonable mistake as to what the law requires." Carswell, 381 F. 3d. at 242.

Further, the  Supreme Court has now held that the two step <u>Saucier</u> procedure is no longer mandatory:

> On reconsidering the procedure required in <u>Saucier</u>, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

<u>Pearson v. Callahan</u>, 2009 U.S. LEXIS 591, at *33 (U.S. Jan. 21, 2009).

Proceeding under either of the <u>Saucier</u> steps, first, in determining whether right was clearly established at the time, and whether these officers may be held liable as a result, it is apparent that either there was no constitutional violation in the first place, or, it was not a clearly established right at the time the Plymouth Township Police Department came in contact with the Plaintiff.  If there was indeed a constitutional violation in this case, it would not be readily apparent to police officers, such that they remain entitled to qualified immunity.

While Plaintiff has alleged no action at all by Chief Lawrence, at most, he has alleged that Detective McGee engaged in a motor vehicle stop of Plaintiff's vehicle, and stood by while it was repossessed by Defendant Venezia.  It would not be apparent to an officer in the position of Detective McGee that standing by to keep the peace, while the vehicle was repossessed, amounted to a constitutional violation.  Further, there is nothing to suggest the police had any information that would indicate the repossession order was fraudulent, even accepting Plaintiff at his word in this regard.  To the contrary, the Complaint asserts that it was the Co-Defendants who formulated a fraudulent repossession order, which they then presented to the police. Knowing that the civil courts remain available to the Plaintiff, it cannot be said that the police believed that Mr. Giannone would be deprived of post deprivation remedies.  The officers are entitled to qualified immunity and they respectfully request the Court so rule.

21

### J.    __Punitive Damages__

Punitive damages are not available against municipal entities and Defendants in their official capacities as a matter of law.  Under §1983, "in order to obtain such damages, a plaintiff must establish facts of record to prove that the individuals knowingly and maliciously deprived the plaintiff of his Civil Rights."  Ruiz v. Philadelphia Housing Authority, 1998 U.S. Dist. Lexis 3925 (E. D. Pa. March 17, 1998).  Punitive damage claims cannot stand against a municipality or its officers in their official capacities.  Feingold v. Septa, 512 Pa. 567 (1986).  In Feingold, the Pennsylvania Supreme Court, quoting the Supreme Court of United States, offered the rationale for prohibiting a punitive damage claim against a municipality:

> In general, Courts viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised.  The Courts readily distinguish between liability to compensate for injuries inflicted by a municipality's officers and agents, and vindictive damages appropriate as punishment for the bad faith conduct of those same officers and agents.  Compensation was an obligation improperly shared by the municipality itself, whereas punishment properly applied only to the actual wrongdoers.  Courts thus protected the public from unjust punishment and the municipalities from undue fiscal constraints.  Newport v. Fact Concerts, Inc.. 453 U.S. 247, 263 (1981).

Feingold, 512 Pa at 579-580.

The law is clear that punitive damages may not stand against a municipality or employees in their official capacity.  E-Z Parks, Inc. v. Phila. Parking Authority E-Z, 110 Pa. Cmwlth. 629 (1987) (Local agency cannot be held liable for punitive damages); Bensalem v. Press, 93 Pa. Cmwlth. 235 (1985) (No legitimate purpose served by punitive damages against municipalities, as taxpayers ultimately harmed); Young v. East Berlin, 4 Pa. D.Nc 4th 140 (Pa. CCP 1989) (Punitive damages may not lie against a municipality).

Plaintiffs have failed to plead evidence of "outrageous conduct" sufficient to support a punitive damage award against the individual Defendants, and no legal basis for punitive damages against them.

WHEREFORE, for the reasons more fully stated herein, Plaintiffs' Complaint, as to Moving Defendants, should be dismissed, with prejudice.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY:     s/Christopher Boyle
CHRISTOPHER BOYLE, ESQUIRE
ID#  PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email:  cpboyle@mdwcg.com
Attorney for Plymouth Township Defendants

DATE:  9/30/13
26/2371354.v1

23

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Carmino Giannone and Giannone Services, Inc. | : Civil Action No. 13-5137 |
| | : |
| v. | : **Jury Trial Demanded** |
| Clyde Neihart d/b/a Stealth Recovery/Right Turn | : |
| Transportation and Jeffrey McGee, individually and in | : |
| his official capacity as Detective for the Plymouth | : |
| Township Police Department and Joseph Lawrence, | : |
| individually and in his official capacity as Chief of the | : |
| Plymouth Township Police Department and Plymouth | : |
| Township d/b/a Plymouth Township Police Department and: |
| Montgomery County d/b/a Plymouth Township Police | : |
| Department and Joseph Venezia, Inc. d/b/a J.V.I. Towing | : |
| and Recovery, and Roger Cackovic d/b/a RJ Cackovic, Inc. : |
| & d/b/a RJ Cackovic Auto Sales, Service & Rental and | : |
| John Does 1-10 | : |
| | : |

<u>**CERTIFICATE OF SERVICE**</u>

I, CHRISTOPHER BOYLE, ESQUIRE, do hereby certify that a true and correct copy of Plymouth Township Defendants' Motion to Dismiss Plaintiffs' Complaint, was electronically filed with the Court on September 30, 2013 and is available for viewing and downloading from the ECF System.  All counsel of record was served via electronic notification.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN


BY:  <u>s/Christopher Boyle</u>
CHRISTOPHER BOYLE, ESQUIRE
ID#  PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email:  cpboyle@mdwcg.com
Attorney for Plymouth Township Defendants


DATE: <u>9/30/13</u>
26/2371354.v1